UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONOVAN JAMES BOLEN,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No.   1:16-CV-233-BLW<br>                 1:11-CR-143-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it the Petition to Vacate, Set Aside, or Correct Sentence brought under 28 U.S.C. § 2255 (Dkt. 1). For the reasons discussed below, the Court will grant the petition and set this case for resentencing.

## BACKGROUND

In the underlying criminal case, Petitioner, Donovan James Bolen, was charged with destroying Government property (a pickup truck and ATV), setting fire to a lumber warehouse, and possessing stolen firearms. He and a co-defendant used Molotov Cocktails to set fire to the vehicles and the warehouse in an attempt to divert police away from their burglary of a pawnshop in Fruitland, Idaho.

Following a jury trial, Bolen was convicted on four counts, three of which

are relevant to this proceeding: Count One for violating 18 U.S.C. § 924(c) by using or carrying a firearm "in relation to any crime of violence," and Counts Three and Four for arson in violation of 18 U.S.C. § 844(f) and § 844(i), respectively.

On June 22, 2016, Bolen filed his § 2255 petition seeking to vacate his § 924(c) conviction. In this petition, Bolen argues that, following the U.S. Supreme Court's decision in *Johnson v. United States,* 135 S. Ct. 2551 (2015), his convictions for arson are not "crimes of violence," and that his conviction under § 924(c) must therefore be set aside. Setting aside Bolen's § 924(c) conviction would have a substantial impact on his sentence—of his total sentence of 444 months, 384 months were imposed for the § 924(c) conviction.

In an order entered April 27, 2017, the Court dismissed Bolen's § 2255 petition, finding that the holding in *Johnson*, which invalidated as unconstitutionally vague the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), did not extend to invalidate the residual clause of § 924(c)(3)(B).

Bolen appealed from the Court's dismissal of his § 2255 petition. On June 24, 2019, while the appeal was pending, the U.S. Supreme Court issued its decision in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), holding that the

residual clause of § 924(c)(3)(B) is unconstitutionally vague. The Ninth Circuit thus vacated this Court's dismissal of Bolen's § 2255 petition and remanded with instructions for this Court "to reconsider its ruling in light of *Davis*, including whether the challenged convictions are crimes of violence under 18 U.S.C. § 924(c)(3)(A)." (Dkts. 17, 18.)

Following remand, this Court directed the parties to submit supplemental briefing. (Dkt. 19.) Bolen filed his supplement on May 19, 2020. (Dkt. 21.) The Government did not file supplemental briefing at that time and instead moved to stay the case pending resolution of pending litigation in the Supreme Court and the Ninth Circuit.

This Court denied in part and held in abeyance in part the Government's motion to stay (Dkt. 25). Specifically, the Court held that the case could proceed on two of the three issues raised by Bolen, noting that resolution of those two issues may be dispositive of Bolen's § 2255 petition. (*Id.*) Those two issues are: (1) whether a conviction under § 844(f) or § 844(i) categorically requires that the property at issue be the "property of another"; and (2) whether a conviction under § 844(f) or § 844(i) categorically requires the "use of force." The Court held in

abeyance the Government's motion to stay as to a third issue.[1] (*Id.*) The Court thus directed the Government to file a supplemental response to Bolen's § 2255 petition, and to limit that response to the two issues on which the request to stay had been denied. The Government has filed its supplemental response brief (Dkt. 26), and Bolen has filed his reply (Dkt. 27).

**LEGAL STANDARD**

To determine whether a conviction is a "crime of violence" under 18 U.S.C. § 924(c), the Court applies a categorical approach. See *United States v. Benally*, 843 F.3d 350, 352 (9th Cir. 2016). "Under this approach, we do not look to the particular facts underlying the conviction, but 'compare the elements of the statute forming the basis of the defendant's conviction with the elements of' a 'crime of violence.'" *Id.* (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013)). "The defendant's crime cannot categorically be a 'crime of violence' if the statute of conviction punishes any conduct not encompassed by the statutory definition of a 'crime of violence.' " *Id.* (citing *Descamps*, 133 S. Ct. at 2281).

"If the statute of conviction does not qualify as a categorical 'crime of

---

[1] The third issue raised by Bolen, on which the Government sought a stay and which the Court held in abeyance, is whether the *mens rea* of maliciousness or recklessness categorically involves "intentional use of force."

violence,' we sometimes then apply the modified categorical approach, which allows us to look to a narrow set of documents that are part of the record of conviction." *Id.* (citing *Descamps*, 133 S.Ct. at 2281; *United States v. Piccolo*, 441 F.3d 1084, 1090 (9th Cir. 2006) (as amended). However, when "the government did not argue that the modified categorical approach applies [the court] need not address it.' " *Id.* at 352-53 (citing *Latu v. Mukasey*, 547 F.3d 1070, 1076 (9th Cir. 2008) ("[W]here, as here, the government has not asked us to apply the modified categorical approach, we 'consider only whether the categorical approach is satisfied.' ").

## ANALYSIS

Section 924(c) prohibits a defendant from using or carrying a firearm "during and in relation to any crime of violence," or possessing a firearm "in the furtherance of any such crime." 18 U.S.C. § 924(c)(1)(A).

Bolen argues that neither his conviction under § 844(f) nor his conviction under § 844(i) qualify as a "crime of violence," and that, accordingly, his conviction for violating § 924(c) must be vacated. The Government concedes that a conviction under § 844(i) does not qualify as a crime of violence (Dkt. 26 at 7 ("The government agrees that a violation under Section 844(i) is not a crime of violence because it includes the use of force on one's own property."); *see also* Dkt. 22 at 2 n.1). Thus, the only remaining issue before the Court is whether a

conviction under § 844(f) categorically qualifies as a "crime of violence" under § 924(c)(3)(A).

To be a "crime of violence" under § 924(c), the crime must include, as an element, the "use, attempted use, or threatened use of physical force against the *person or property of another*." 18 U.S.C. § 924(c)(3)(A) (emphasis added). Bolen argues that a conviction under § 844(f) does not meet this requirement because it does not require that the property at issue be the "property of another." Specifically, he argues that a defendant can be convicted under § 844(f) for targeting his own property. The Court agrees.

First, an examination of the plain language of § 844(f) demonstrates that a defendant can be convicted for targeting property their own property. Section 844(f) provides, in relevant part:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, *or any institution or organization receiving Federal financial assistance*, shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

18 U.S.C. § 844(f)(1) (emphasis added). Thus, under § 844(f) the targeted property must be owned or possessed by, or leased to, *either* (1) the federal government, or (2) an institution or organization receiving federal financial assistance. This means

that a defendant that receives federal financial assistance in relation to the targeted property can be convicted under § 844(f) for targeting their own property.

For example, if the owners of property receive funds through a U.S. Department of Housing and Urban Development (HUD) block grant, and use those funds to renovate their property, the property is owned by an "organization receiving Federal financial assistance."[2] *See* 18 U.S.C. § 844(f); *United States v. Hersom*, 588 F.3d 60, 67-68 (1st Cir. 2009). If the owners then "maliciously damage[] or destroy[], or attempt[] to damage or destroy, by means of fire or an explosive," that property, they are subject to prosecution under § 844(f). *Cf. Hersom*, 588 F.3d 67-68 (upholding conviction under § 844(f)(1) where the arson was committed by a defendant against privately-owned property where the property owner had received funds through a HUD block grant and had used those funds to renovate the targeted property and thus the owner of the property had received federal financial assistance in relation to the targeted property).

Another example is if property owners rent their property to tenants receiving federal financial assistance through Section 8 of the U.S. Housing Act of 1937, the property is owned by an "organization receiving Federal financial

---

[2] Title 18 defines the term "organization" as "a person other than an individual." 18 U.S.C. § 18.

assistance." This is because, through Section 8, HUD provides housing assistance for low-income families through various means, including through payments to property owners who rent their property to Section 8 tenants. 42 U.S.C. § 1437f. If the property owners then "maliciously damage[] or destroy[], or attempt[] to damage or destroy, by means of fire or an explosive," that property, they would be subject to conviction under § 844(f) for targeting their own property. *Cf. United States v. Davis (Davis I)*, 98 F.3d 141, 144 (4th Cir. 1996).

In *Davis I*, the targeted property was being "used by"[3] an organization that received federal financial assistance. The organization at issue was a public housing agency that received money to make payments for low-income housing assistance, and the property at issue was rented to a tenant that received HUD Section 8 housing assistance. *Id.* at 144. The organization was thus receiving federal financial assistance that was in turn provided to the landlord. The Fourth Circuit held that this was sufficient to support a conviction under § 844(f) because

---

[3] Section 844(f) was amended in 1996 to remove, among other things, the "used by" language. H.R. Conf. Rep. 104-518 (1996); *compare* 18 U.S.C. § 844(f) (1996) *with* 18 U.S.C. § 844(f) (1997). The Court recognizes that *Davis I* relied on the "used by" language that is no longer a part of § 844(f). The Court finds, nonetheless, that *Davis I* is persuasive in that it confirms the plain language of § 844(f), that a defendant can be convicted of targeting property that is not owned or possessed by, or leased to, the government.

the home was being "used by" the organization to accomplish its statutory function of providing sanitary, safe, affordable housing to the low-income tenant, and the organization was receiving federal financial assistance in relation to the targeted property to accomplish this function. *Id.* at 144-45.

The Court's interpretation of § 844(f) as covering property that is not owned or possessed by, or leased to, the federal government is also consistent with the statute's legislative history, which explains:

> "To permit the federal government to more directly participate in the investigation and prosecution of the recent rash of attacks on ROTC facilities and other buildings on college campuses culminating in the tragedy at the University of Wisconsin, Section 844(f) also encompasses real and personal property belonging to institutions and organizations receiving federal financial assistance."

1970 U.S.C.C.A.N. 4007, 4046. "The University of Wisconsin incident alluded to was the August 1970 bombing of the Army Mathematics Research Center at the University of Wisconsin, an Army-funded think tank." *Hersom*, 588 F.3d at 66 (citing Hearings Before Subcomm. No. 5 of the H. Comm. on the Judiciary, 91st Cong. 324-25 (1970) (Letter of Hon. Henry C. Schadeberg, Member of Congress)).

The Government argues, nonetheless, that a conviction under § 844(f) categorically requires that the crime be committed against government property, and that the conviction is therefore a crime of violence. In making this argument, the Government fails to address the fact that § 844(f) sweeps more broadly than

merely covering government property and also allows a conviction based on property owned or possessed by, or leased to, "any institution or organization receiving Federal financial assistance." 18 U.S.C. § 844(f). Moreover, the cases cited by the Government in support of its argument are unpersuasive.

The Government cites to *United States v. Davis (Davis II)*, 2016 WL 11257359 (E.D. Va. 2016), which was a postconviction proceeding brought by the same defendant at issue in *Davis I*, discussed above. In *Davis I*, the direct appeal, the Fourth Circuit upheld the defendant's conviction under § 844(f) where the defendant had targeted privately-owned property that was "used by" a public housing agency that received HUD funding that was, in turn, provided to the property owner. In *Davis II*, the post-conviction proceeding, the district court summarily decided, without any analysis, that the conviction under § 844(f) was a crime of violence under § 924(c). 2016 WL 11257359, at *5. The district court failed to discuss the fact that § 844(f) allows conviction of a defendant that targets privately-owned property and that, thus, a defendant could potentially be convicted of targeting their own property. *See id.* Moreover, all but one of the cases the district court relied on in reaching its conclusion held that § 844(i) is a crime of violence, a holding that the government concedes is incorrect. The other case relied on in *Davis II* is *Mbea v. Gonzales*, 482 F.3d 276, 279 (4th Cir. 2007), a case

which is also relied on by the Government in the present case.

In *Mbea*, the Fourth Circuit held that a violation of District of Columbia Code § 22-401(1994)[4] was a "crime of violence" under 18 U.S.C. § 16(a), because it involved the use of physical force against the property of another. 482 F.3d at 280. Section 22-401 of the D.C. Code made it unlawful to

> maliciously burn or attempt to burn any dwelling, or house, barn, or stable adjoining thereto, or any store, barn, or outhouse, or any shop, office, stable, store, warehouse, or any other building, or any steamboat, vessel, canal boat, or other watercraft, or any railroad car, the property, in whole or in part, of another person, or any church, meetinghouse, schoolhouse, or any of the public buildings in the District, belonging to the United States or the District of Columbia.

*Mbea*, 482 F.3d at 279 (citing D.C. Code § 22-401 (1994)). The *Mbea* court did not discuss or analyze whether § 22-401 required the targeted property to be the "property of another." Instead, the court focused on and analyzed only whether § 22-401 required the "use of force." Thus, *Mbea* does not provide any support for the Government's argument that a conviction under § 844(f) categorically requires the targeted property to be the "property of another."

The Government also relies on *United States v. York*, 600 F.3d 347 (5th Cir. 2010). In that case, the defendant was convicted under § 844(f) for arson to a

---

[4] This statute was apparently renumbered and is now found at D.C. Code § 22-301 (2000). *See Mbea*, 482 F.3d at 279.

county courthouse that housed county agencies that received federal funding, as well as some federal agencies and departments. *Id.* at 353. The Fifth Circuit upheld the § 844(f) conviction, finding that the evidence—including evidence that the county agencies and institutions in the county courthouse received federal financial assistance, and that there were also federal agencies or departments that possessed a portion of the courthouse—was sufficient to demonstrate a "federal nexus" with the building for purposes of the § 844(f) conviction.

The *York* decision does not assist the Government. The decision merely demonstrates that targeted property that is owned or occupied by a non-federal entity can support a § 844(f) conviction as long as the entity receives federal financial assistance. The Court agrees with this general proposition and, indeed, this is exactly why a conviction under § 844(f) does not categorically qualify as a crime of violence—defendants who receive federal financial assistance in relation to their own property who then target that property are subject to conviction for violating § 844(f).

The Government's reliance on a model jury instruction is equally unavailing. This instruction provides:

> The second element that the government must prove beyond a reasonable doubt is that the property which was damaged or destroyed was federal property. Federal property is defined in the statute as any building, vehicle, or other real or personal property in whole or in part owned, possessed or

used by the United States government, any department or agency of the
United States government, or any institution or organization receiving
federal financial assistance.

2 Modern Federal Jury Instructions-Criminal ¶ 30.01 (2019). This model jury instruction merely reiterates that, to convict a defendant under § 844(f), there must be a federal "nexus" with the property. Further, although the instruction uses the term "federal property," that term is defined to include property owned, possessed, or used by[5] "any institution or organization receiving federal financial assistance." *Id.* Thus, "federal property" under the instruction includes property owned by a defendant if that defendant receives federal financial assistance in connection with that property.

In sum, the Court finds that defendants can be convicted under § 844(f) for targeting their own property if the defendants received federal financial assistance in connection with that property. Accordingly, a conviction under § 844(f) does not categorically require that the targeted property be the "property of another," and does not, therefore, qualify as a "crime of violence" under § 924(c). *See Benally*, 843 F.3d at 352 ("The defendant's crime cannot categorically be a 'crime of

---

[5] As noted above, § 841(f) was amended in 1996 to remove the "used by" language. Thus, this jury instruction does not accurately reflect the elements of § 841(f) at the time Bolen committed the underlying offense in 2011.

violence' if the statute of conviction punishes any conduct not encompassed by the statutory definition of a 'crime of violence.' " (citing *Descamps*, 133 S. Ct. at 2281)).

Where, as here, the statute of conviction does not qualify as a categorical "crime of violence," the Court can move on to apply the modified categorical approach. *See Benally*, 843 F.3d at 352. However, the Government has not argued that the modified categorical approach applies here and, accordingly, the Court need not address it. *See id.* ("Here, the government did not argue that the modified categorical approach applies and we need not address it."); *Latu*, 547 F.3d at 1076 ("[W]here, as here, the government has not asked us to apply the modified categorical approach, we consider only whether the categorical approach is satisfied." (internal quotation marks and citation omitted)).

Finally, because the Court finds that § 844(f) does not qualify as a "crime of violence" because it does not categorically require that the targeted property be the "property of another," the Court need not reach the second, alternative argument raised by Bolen of whether § 844(f) categorically requires the "use of force."

## ORDER

**IT IS ORDERED** that Bolen's Petition under § 2255 is GRANTED, his conviction under § 924(c) is VACATED, and the case is to be set for resentencing. A follow-up order will be issued setting the date and time for resentencing.



DATED: April 29, 2021

_____
B. Lynn Winmill
U.S. District Court Judge